[Civ. No. 15283. Second Dist., Div. Three. Oct. 30, 1946.]

CLINTON SHERIDAN SMITH, Appellant, v. THE BOARD OF EDUCATION OF LOS ANGELES CITY JUNIOR COLLEGE DISTRICT et al., Respondents.

David Sokol and Roy E. Eberhard for Appellant.

Harold W. Kennedy, County Counsel, and Wm. E. Lamoreaux, Deputy County Counsel, for Respondents.

SHINN, J.—This is a proceeding in mandamus to require the Board of Education of Los Angeles City Junior College District to reinstate plaintiff in his position as a permanent classroom teacher in the Los Angeles City Junior College District, as of the date when he was dismissed, June 30, 1944, and to pay him his salary as such teacher from the 1st day of September, 1944, until he is reemployed in his former position. Judgment was for defendants and plaintiff has appealed.

Plaintiff was employed as a probationary teacher by the Board of Education of the Los Angeles City High School District in the year 1924, and thereafter taught as a classroom teacher in the San Fernando High School until June, 1928; he was certified in 1926 as a permanent teacher for the high school district, was on leave of absence for a year prior to September 1, 1929, and thereafter was assigned to and taught in the Los Angeles City Junior College, then operated by the high school district, for a period of two years, as a permanent classroom teacher. In the year 1931 the Los Angeles City Junior College District was established and the district board on August 20, 1931, adopted a resolution electing and assigning to the Los Angeles City Junior College, effective as of August 31, 1931, 132 members of the faculty of said

institution. Plaintiff was one of the associates elected to the said faculty; he taught for a period of three consecutive years and on or about August 24, 1934, was certified as a permanent classroom teacher in the Los Angeles City Junior College District, continuing to teach therein until June 30, 1944.

The court found that during the school year 1943-1944, the enrollment in said Los Angeles City Junior College District decreased to such an extent that it became and was necessary for defendant board to dismiss approximately 74 permanent teachers, and they were dismissed, effective as of June 30, 1944, plaintiff being one of those so dismissed. The findings set forth the average daily attendance of pupils each school month of the year 1943-1944. The total fell from 2,561 on September 1, 1943, to 1,897 on June 10, 1944. In the following school year the total attendance ranged from 2,448 on September 1, 1944, to 2,240 on May 9, 1945. In the year 1943-44, the number rose to as high as 2,959, due to attendance of members of the United States Army under special contract with the army, which was cancelled in March, 1944, after which none enrolled in the special training program remained as students.

Plaintiff's attack upon his dismissal is twofold: First, that he was improperly dismissed when the teaching force was reduced, for the reason that the force was unnecessarily reduced, and, second, that if the reduction was necessary, he was included among those dismissed in disregard of his seniority rights. He claims a higher seniority rating than the board had given him.

Section 13651 of the Education Code authorizes a decrease in the number of permanent employees when the same is made necessary by a decrease in the number of pupils. The court concluded that the dismissal of teachers was justified by the decrease in the number of students. This conclusion has full support in the findings and the evidence.

The next question concerns plaintiff's seniority rating. This was an important fact for the trial court to determine, for the reason that section 13651, *supra,* provides: "In making dismissals employees shall be dismissed in the inverse of the order in which they were employed," etc. and section 13652 provides that if the number of teachers be increased or the service reestablished within one year from the time of dismissal, the dismissed employees shall have the preferred right

of reappointment in the order of their original employment. On August 20, 1931, when 132 instructors were employed and assigned in a group to teach in the Los Angeles City Junior College District, they were listed alphabetically and seniority numbers were assigned in the order in which the names were listed, that is to say, in alphabetical order. Plaintiff's seniority position was number 120 on the list. During the trial the parties entered into, signed and filed a stipulation of facts, attached to which, marked ''Exhibit A,'' was a copy of the 1931 list. The stipulation read, in part: ''That on August 20, 1931, the then acting Board of Education of the City of Los Angeles, as the governing board of the Los Angeles City Junior College District, elected and assigned to the Los Angeles Junior College District, effective as of August 31, 1931, 132 members of the faculty of said institution; that attached hereto, marked 'Exhibit A,' is a list of the names, positions and seniority numbers of said members of the faculty,'' etc. In May, 1944, the 1931 list and the minutes of the board were resorted to as a means of ascertaining the order in which the instructors had been employed. In May, 1944, the instructors were listed according to the order in which they had been employed, that is to say, in accordance with their relative seniority positions, and plaintiff was given the number 120 which had been assigned to him originally. The board did not make any changes in the relative seniority positions as they had been determined in 1931. Plaintiff's number, 120, brought him within the 74 instructors who were dismissed in the inverse order in which they had been employed. He was given that same position in the matter of a preferred right to reappointment when his number should be reached.

Plaintiff's claimed grievance is not that his seniority rights were disregarded at the time of his dismissal; it is that he should have been given a more favorable position of seniority when the board in 1931 determined the order in which the 132 instructors were employed.

Before we proceed to a discussion of the grounds of plaintiff's claim, we should point out that plaintiff waited for 13 years before raising any question as to the correctness of the assignments of seniority that were made in 1931. As will appear hereinafter, he is asking the court to advance him to a position on the seniority list ahead of other instructors,

although he does not point out where he claims to belong on the list, or he would have the court issue its mandate requiring the board to annul the action taken in 1931 and proceed to assign seniority positions to the 132 instructors by some method other than the one that was used at the time. He cannot, of course, be given a more favorable position except at the expense of those who now stand higher on the list than he does. It is far too late for him to complain of seniority ratings which have been respected for 13 years. He has slept on his rights, if any, and is guilty of laches. (*Hayman* v. *City of Los Angeles,* 17 Cal.App.2d 674 [62 P.2d 1047]; *Newbury* v. *Civil Service Commission,* 42 Cal.App.2d 258 [108 P.2d 745].) This would be a sufficient reason for affirming the judgment, but we do not adopt it, for the reason that the point was not raised at the trial, was not covered by the court's findings or conclusions, and is not mentioned in the briefs of counsel. We therefore proceed to a discussion of the claims advanced by plaintiff with reference to his claimed seniority rights.

■ His first contention is that he should have been given credit for the two years he taught in the junior college, 1929-1931, while it was operated by the high school district. It appears to be conceded that if this had been done, he would have received a seniority rating which would have placed him above the 74 instructors who were dismissed. His first argument is that section 13093 of the Education Code applies to his case and sustains his position. The section reads as follows: ''The division, uniting, unionization, unification, or consolidation of any school district or districts, or any change in school district boundaries or organization, shall not affect the classification of certified employees already employed by any school district affected. Such employees shall have the same status with respect to their classification by the district, including time served as probationary employees of the district after the division, uniting, unionization, unification, or consolidation, or change in school district boundaries or organization as they had prior thereto. . . .'' Plaintiff argues that his ''classification'' was affected by the action of the board in ignoring his two years of service for the high school district which preceded the organization of the junior college district, contrary to the provisions of the section. Defendant answers that the section in question is in article III of chapter 8, division 7, of the Education Code, which chapter is

entitled, "Employment of Persons Requiring Certification," article III being entitled, "Classification of Employees," that it relates to classification and not to seniority and that no question of plaintiff's classification is involved. The trial court deemed section 13093 to be inapplicable, and we are of the same opinion. Employees are classified by the Education Code as probationary (§ 13101), substitute (§ 13103), temporary (§ 13104), and permanent (§ 13081 et seq.). Plaintiff's classification has not been affected. His seniority rights are another matter, to which section 13093 has no relation. It is immaterial whether the organization of the junior college district amounted to a change in the organization of the high school district within the meaning of said section, for if it did, the result would be that, while the section would give protection to employees so far as classification is concerned, it would not give protection to claimed rights of seniority. The date of the original employment by the high school district would be recognized, under section 13093, only if it was necessary to do so in order to prevent a disturbance of classification, a situation which does not exist in plaintiff's case.

■ Plaintiff further insists that if section 13093 does not apply to his case, the two districts should be regarded as a single district, and that the date when he commenced teaching in the junior college for the high school district should therefore have been taken as the date of his employment by the junior college district. We cannot agree that the two districts can be regarded as identical. It is well established, as stated by defendants, that "each school district is a separate legal entity and that the employees of one are not employees of another district, even though the governing boards of both districts are composed of the identical personnel." (*Gould* v. *Santa Ana High School Dist.*, 131 Cal.App. 345 [21 P.2d 623]; *McKee* v. *Edgar*, 137 Cal.App. 462 [30 P.2d 999]; *Brightman* v. *Board of Education*, 4 Cal.App.2d 394 [41 P.2d 346].) In each of these cases it was held that employment by one district could not be deemed a part of the term of the employment by another district. Plaintiff seeks to avoid the application of this holding by pointing out that the cases dealt with employment by separate districts which were coexistent, whereas here the junior college district did not come into existence until plaintiff's services for the high school

district had been terminated. This, in our opinion, does not distinguish the cases in principle. It is true that the Los Angeles City High School District and the Los Angeles City Junior College District are coterminous and governed by boards with identical membership, as allowed by section 4101 of the Education Code, but the fact that separate districts are authorized under these circumstances is evidence of the intention of the Legislature that each should exist and function as a separate entity. If employment by a high school district must be considered as employment by a junior college district under such facts as we have here, it would have to be by reason of some provision of the Education Code, and there is no such provision.

Plaintiff argues further that the relative seniority standings of the 132 members of the faculty employed August 31, 1931, if not determined on the basis of former employment by other districts, should have been decided by lot or by the relative efficiency rating of the members of the group, and that the use of the alphabetical listing was unreasonable, unfair and discriminatory. The trial court found nothing unfair in the procedure and we agree with that conclusion. The 132 teachers, at the time they were employed, had no seniority rights. The board was free to adopt any convenient method for determining the order in which they were employed. But if we were of the opinion that some other method would have been more suitable, we would still have to respect the board's interpretation of its duty in the premises. It is not the function of courts to exercise supervision over other departments of government in matters of administrative detail. The decision of the board that the employment of the instructors was in the order in which their names appeared on the alphabetical list was not in disregard of any right which plaintiff or the others had to be employed in some different order.

The judgment is affirmed.

Desmond, P. J., and Wood, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1946. Carter, J., voted for a hearing.