[S. F. No. 16112. In Bank.—August 31, 1938.]

EDWARD D. VANDELEUR, Petitioner, v. FRANK C. JORDAN, Secretary of State, etc., Respondent.

Clarence E. Todd and Henry C. Todd for Petitioner.

U. S. Webb, Attorney-General, and Robert W. Harrison, Chief Deputy Attorney-General, for Respondent.

Darwin Bryan for Intervener.

THE COURT.—Petitioner, a qualified elector and taxpayer of the city and county of San Francisco, seeks a writ of mandate directed to the Secretary of State commanding him (1) to refrain from submitting a certain purported initiative measure to the electors of the state, and (2) not to certify the measure to the registrars of voters and county clerks of the state. Proponents of the proposal, pursuant to permission of the court, have intervened in the proceeding.

The measure which petitioner seeks to keep from being submitted to the voters at the next general election is a proposed initiative act. It is signed by the requisite number of qualified electors of the state and has been filed with the Secretary of State within the time entitling it to be submitted at the November election.

Petitioner's sole contention is that the proposed statute should be kept from the ballot because the circulation title of the measure appearing upon each page of the initiative petition whereon signatures appear, does not contain a "summary of the chief purpose and points" of the proposed law as required by the provisions of article IV, section 1 of the Constitution and section 1197b of the Political Code.

In the cases of *Kornmann* v. *Jordan*, S. F. No. 16098, *ante*, p. 61, and *Epperson* v. *Jordan*, S. F. No. 16101, *ante*, p. 61 [82 Pac. (2d) 445], this day decided we had occasion to review

the constitutional and statutory provisions here involved. ■ In that decision it was held that in passing upon the legal sufficiency of the attorney-general's title, all presumptions are in favor of the propriety of his actions and that if reasonable minds may differ as to whether the title contains a "summary of the chief purpose and points" of the proposal, the title so prepared must be held to be legally sufficient. Auxiliary and subsidiary matters need not be included in the title.

The proposed statute here involved is quite long. Its provisions cover four and one-half legal size pages single spaced. No useful purpose would be served in analyzing in detail each of its provisions. Section 1 states, in detail, the proponents' analysis of the existing labor problem, and the proponents' views as to the abuses now existing in reference thereto. Section 2 defines some 13 different terms, including the terms "labor organization", "coerce" or "coercion", and "intimidate" and "intimidation". Sections 3, 4 and 5 prohibit certain types of picketing as fully set forth in these sections. Section 6 permits a defined type of picketing under the circumstances set forth in the section. Section 7 prohibits the display of banners under certain defined circumstances, while section 8 prohibits the utterance of certain language as set forth in this section. Section 9 prohibits conspiracies or agreements between two or more persons affecting the disposition of another's goods, while section 10 contains certain exceptions to section 9. Section 11 makes it a just cause for dismissal for any employee to refuse to work for the reason, in whole or in part, that an industrial controversy exists. Section 12 makes it unlawful for any employee or labor organization to intimidate or coerce any other person to join or refrain from joining, or to remain, or to cease to remain a member of any labor organization, and makes certain other acts unlawful. Section 13 states that the act does not prevent employees from voluntarily striking, or otherwise terminating their employment. Section 14 makes it unlawful to block or impede any public place or lawful access thereto or any exit or approach to any place of business so as to interfere with any person entering or leaving such places. Section 15 makes it unlawful for any person to cause the driver of any vehicle to slow down or stop with intent to induce the driver of such vehicle to refrain from entering

or leaving any place of business, or from seeking and leaving employment, etc. Section 16 prohibits the seizure of any private property as a means of forcing a settlement of a labor dispute. Section 17 prohibits conspiracies to violate certain provisions of the act, while section 18 makes violation of certain provisions of the act a crime. Section 19 gives any person injured by a violation of the act a civil action for damages. Section 20 confers jurisdiction upon the superior courts to prevent and restrain violations of the act and confers certain powers and duties upon the district attorneys in connection with enforcement of the act, while sections 21–24 regulate the circumstances under which preliminary restraining orders and injunctions shall be granted, and what shall be done in case of violations of such orders. Section 25 repeals all statutes or portions of statutes in conflict with the proposal, while section 26 contains the usual severability clause, with a specific provision that certain enumerated sections are intended to be severable.

The circulation title prepared by the attorney-general, and here challenged, is as follows: "LABOR. Initiative. Defines what constitutes lawful and unlawful picketing, boycotting and display of banners. Prohibits seizure of private property, coercion, intimidation, obstruction or interference with use of public highways, streets, wharves, docks, and other public places, use of abusive or misleading statements or threats of violence, and certain other acts in connection with labor disputes and other industrial controversies. Recognizes the right of employees to strike and bargain collectively. Provides for civil damages and prescribes criminal punishments and penalties for and judicial procedure to prevent and enjoin violations thereof. Repeals all laws conflicting therewith."

Petitioner challenges this title solely on the grounds that it fails to disclose that the terms "labor organizations", "coerce" and "coercion", "intimidate" and "intimidation", are defined in the act, and that the definitions there contained are "new" and "revolutionary". It is quite obvious from a reading of the title that it does set forth with clarity, considering the length and complexity of the measure, a "summary of the chief purpose and points" of the proposed statute. The fact that the title fails to indicate that certain terms are defined in the act, even

though those definitions may be "new" definitions, in no way detracts from the legal sufficiency of the title. Such definitions are clearly auxiliary and subsidiary to the chief purpose and points of the proposal. What was said in the Kornmann and Epperson decisions, *supra*, concerning the legal sufficiency of the title there involved, is equally applicable here. On the authority of that decision, and for the reasons therein stated, it is held that the title here involved is legally sufficient.

For the foregoing reasons the alternative writ is discharged and the peremptory writ is denied.