[Civ. No. 46695. First Dist., Div. One. Oct. 1, 1981.]

ALISON BRENNAN, Plaintiff and Respondent, v.
BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF
SAN FRANCISCO et al., Defendants and Appellants.

COUNSEL

George Agnost, City Attorney, Burk Delventhal and Diane L. Hermann, Deputy City Attorneys, for Defendants and Appellants.

Danaher & Klynn, Althea Lee Jordan, Ruffin & Rotwein and Geoffrey Rotwein for Plaintiff and Respondent.

OPINION

**NEWSOM, J.**—We are asked to review a trial court order which enjoined distribution of a ballot proposition summary of Proposition U. In accordance with applicable municipal laws, a ballot proposition summary of a proposition entitled "San Francisco Renter's Property Tax

Rebate Ordinance of 1978"—was prepared by "The Ballot Simplification Committee" (hereinafter Committee).[1]

Prior to the election, respondent filed a petition for writ of mandate challenging the legality of the digest for Proposition U, and seeking to enjoin distribution of the pamphlet until the digest was corrected to conform to the law. Based upon a finding that the ballot summary was not a fair representation of the proposition, the court orally granted the petition for writ of mandate and enjoined distribution of the voters' pamphlets pending an attempt by the Committee to redraft the digest in language acceptable to the court.

After submittal of a modified digest by the Committee—also found unacceptable—the trial court prepared its own "Revised Analysis" of the proposition, which, as part of its judgment granting respondent's petition, ordered distributed to each voter with the explanation that it was "to be considered in place of the analysis" prepared by the Committee.

■ Appellants complain that the trial court employed an improper standard in reviewing the Committee's ballot digest and, therefore abused its discretion in granting respondent's petition and ordering dissemination of its "Revised Analysis."[2] They submit that the actions of the Committee, as an administrative agency and coequal branch of government, should have been altered only if found "arbitrary or capricious," and that the trial court erroneously ignored the "arbitrary and capricious" test by reviewing the fairness and accuracy of the Committee's digest.

---

[1] Section 5.70 of the San Francisco Administrative Code provides for the Committee, which is a body of communications experts; section 5.71 of the code empowers the Committee to prepare digests for all municipal ballot propositions; section 5.79 simply directs that each voter information pamphlet mailed to voters contain "[a] copy of the digest of each measure as prepared by the Committee."

Section 5.73 of the San Francisco Administrative Code specifies the following format for all ballot proposition digests: "Each digest of a measure shall include four identifying subsections. These shall be entitled and shall appear in the following sequence in the ballot pamphlet in bold face: Headline, The Way it is Now, A 'Yes' Vote Means, A 'No' Vote means. [¶] Each digest shall be limited to a maximum of 300 words exclusive of the title for each subsection provided for herein."

[2] We note that the particular issues raised by the instant appeal have, as a practical matter, been rendered moot by the November 1978, election. However, we have rejected respondent's mootness argument based upon our conclusion that the case presents a problem of recurring significance and public interest. (*Grier* v. *Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325, 330 [127 Cal.Rptr. 525].)

We agree with appellants that in reviewing the legality of an administrative regulation adopted pursuant to a delegation of legislative power, "the judicial function is limited to determining whether the regulation (1) is 'within the scope of the authority conferred' (Gov. Code, § 11373) and (2) is 'reasonably necessary to effectuate the purpose of the statute' (Gov. Code, § 11374)." (*Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal.Rptr. 183, 546 P.2d 687].) Often repeated is the rule that in such matters a court may not reweigh the evidence, substitute its judgment for that of an administrative agency, or inquire into the wisdom or soundness of reasoning by which the agency's conclusions were reached. (*Faulkner v. Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 329 [253 P.2d 659]; *City of Orange v. Heim* (1973) 30 Cal.App.3d 694, 721 [106 Cal.Rptr. 825].) As noted in *Smith v. Board of Education* (1946) 76 Cal.App.2d 662, 668 [173 P.2d 856]: "It is not the function of courts to exercise supervision over other departments of government in matters of administrative detail."

However, these principles, while abstractly correct, are not applicable to the present controversy. Preparation of the ballot digest by the Committee was neither a legislative nor judicial act.[3] "Generally speaking, a legislative action is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts." (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]; *Lewin v. St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 383-384 [146 Cal.Rptr. 892].) Clearly, in producing the ballot digest the Committee did no more than follow existing statutory guidelines: its duty to prepare a summary of the proposed initiative measure was therefore a ministerial one. (*Schmitz v. Younger* (1978) 21 Cal.3d 90, 92 [145 Cal.Rptr. 517, 577 P.2d 652].) Under such circumstances, judicial review of the ballot summary at issue here is not limited to the "arbitrary and capricious" standard. Accordingly, we find no merit in the argument that the trial court was prohibited from exercising broad powers of review concerning the fairness of the Committee's summary. (*Epperson v. Jordan* (1938) 12 Cal. 2d 61, 64 [82 P.2d 445].)

---

[3]If the actions of the Committee were classified as judicial or quasi-judicial in nature, considering the fundamental, vested right involved here—the right of the initiative—the court would be authorized to exercise its independent judgment in reviewing the digest. (*Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 820 [140 Cal.Rptr. 442, 567 P.2d 1162].)

The proper scope of such judicial review may be found in appellate decisions which have considered ballot summaries drafted pursuant to state law. For each statewide initiative or referendum measure, the Attorney General is required to prepare a "summary of the chief purposes and points" of the proposal. (Cal. Const., art. II, § 10; Elec. Code, §§ 3502, 3503.)[4] The Legislative Analyst is also required to "prepare an impartial analysis" of each measure to be voted upon. (Elec. Code, § 3572; Gov. Code, § 88003.)[5] The ballot pamphlet must contain a copy of the Attorney General's summary (Elec. Code, § 3571) and the analysis of the Legislative Analyst (Elec. Code, § 3570).

Ballot measure summaries prepared by the Attorney General have, on occasion, come under judicial scrutiny. It has been consistently held that a ballot summary need not contain a reference to "auxiliary or subsidiary" matters; a statement of the major objectives or "chief purpose and points" of the measure is satisfactory. (*People* v. *Frierson* (1979) 25 Cal.3d 142, 187 [158 Cal.Rptr. 281, 599 P.2d 587]; *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 243 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Perry* v. *Jordan* (1949) 34 Cal.2d 87, 94 [207 P.2d 47].) In *Fox etc. Corp.* v. *City of Bakersfield* (1950) 36 Cal.2d 136, 145 [222 P.2d 879], the court noted: "'The title need not contain a summary or index of all of the measure's provisions. Within certain limits what is and what is not an important provision is a question of opinion. Within those limits the opinion of the attorney-general should be accepted by this court.'" Moreover, "[o]nly

---

[4]According to section 3502, the Attorney General's title and summary "shall not exceed a total of 100 words."

[5]Section 3572 of the Elections Code and section 88003 of the Government Code are identical; they provide: "The Legislative Analyst shall prepare an impartial analysis of the measure describing the measure and including a fiscal analysis of the measure showing the amount of any increase or decrease in revenue or cost to state or local government. Any estimate of increased cost to local governments shall be set out in bold face print in the ballot pamphlet. The analysis shall be written in clear and concise terms which will easily be understood by the average voter, and shall avoid the use of technical terms wherever possible. The analysis may contain background information, including the effect of the measure on existing law and the effect of enacted legislation which will become effective if the measure is adopted, and shall generally set forth in an impartial manner the information which the average voter needs to understand the measure adequately. The Legislative Analyst may contract with professional writers, educational specialists or other persons for assistance in writing an analysis that fulfills the requirements of this section, including the requirement that the analysis be written so that it will be easily understood by the average voter. The Legislative Analyst may also request the assistance of any state department, agency, or official in preparing his analysis. The title of the measure which appears on the ballot shall be amended to contain a summary of the Legislative Analyst's estimate of the net state and local government financial impact."

in a clear case should a title ... [or summary] be held insufficient."
(*Epperson* v. *Jordan, supra*, 12 Cal.2d 61, 66.)

■ However, a ballot summary cannot be misleading. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra*, 22 Cal.3d 208, 243; *Clark* v. *Jordan* (1936) 7 Cal.2d 248, 251 [60 P.2d 457, 106 A.L.R. 549].) It must be "true and impartial, and not argumentative ... likely to create prejudice for or against the measure" (*Amador Valley, supra*, 22 Cal.3d at p. 243), and reasonably inform the voter of the character and real purpose of the proposed measure. (*Boyd* v. *Jordan* (1934) 1 Cal.2d 468, 472 [35 P.2d 533].) The case law thus clearly empowers trial courts to examine the content of a ballot digest to determine if it *fairly* represents the measure it summarizes. We turn then to a consideration of the trial court's actions in light of these principles. In order to do so we must reiterate respondent's objections to the Committee's ballot summary.[6]

■ Initially, respondent asserts that the first sentence of the "Proposal" section is inaccurate; it states, "Proposition U would require that a landlord pass on to his or her tenants the total tax reduction received for that property from the passage of State Proposition 13." Respondent submits that such a statement is too absolute, since Proposition U provides for circumstances in which tax savings need *not* be passed on to a tenant, as where (1) the landlord is an owner/occupier of a unit, (2) there is a vacant unit in the building, or (3) there is a manager-occupied unit, and (4) the property is otherwise exempt from operation of the ordinance as described below.

Without question, the Committee's characterization of the proposition is not *completely* accurate. It tends to make the measure appear more inflexible than it really is. The trial court properly so found, and amended the sentence by adding the phrase "with certain exceptions" to the Committee's version.[7]

Respondent objects as well to the second sentence of the "Proposal" section, which reads: "Proposition U would also prevent any rent in-

---

[6]These same objections were made at trial by respondent by way of the declaration of respondent's counsel submitted in support of the petition for writ of mandate.

[7]With the court's addition, the sentence read: "Proposition U would *with certain exceptions* require that a landlord pass on to his or her tenants the total tax reduction received for that property from the passage of State Proposition 13." (Italics added.)

crease through December, 1979, unless the landlord can prove that costs on the rental unit have gone up." This statement, read alone, is clearly incorrect. Pursuant to section 6(d) of the proposition landlords may raise rents in one of two instances: (1) if increased costs—due to maintenance, taxes or improvements—are incurred, or (2) upon a raise in the consumer price index, and with reference thereto. Thus, the second sentence ignores the alternative method by which rents may be raised: on the basis of inflation, without submitting documentary evidence of increased costs.

Appellants claim that sentence two must be considered in conjunction with the following sentence, which explains: "Rents could be raised for inflation or other increased costs, but not both." This addition adequately apprises the voter of the alternative allowable method of raising rents, though it is a bit confusing. Respondent argues, as he did at trial, that even when the sentences are read together, they are contradictory.[8] The trial court agreed, and combined the sentences, as follows, into a more understandable and accurate statement: "Proposition U would also limit any rent increases through December 1979, to either a standard cost of living formula or documented increased costs."

Next, respondent insists that the last sentence of the "Proposal" section is misleading. It provides: "Proposition U requires that *every* landlord notify *every* tenant of how the rent reduction from Proposition 13 was calculated, and to make available for tenants a list of rents for all units in the property as well as books, records and receipts to document any reasons for a proposed rent increase." (Italics added.)

Respondent notes that Proposition U provides for numerous exceptions to this general rule, none of which were stated in the digest,[9] while landlords who elect to raise rents by reference to the consumer price index need neither document their raises nor make their books, records and receipts available to tenants under Proposition U.

---

[8]The two pertinent sentences appeared in the original digest as follows: "Proposition U would also prevent any rent increase through December, 1979, unless the landlord can prove that the costs on the rental unit have gone up. Rents could be raised for inflation or other increased costs, but not both."

[9]For example, sections 3(d) and 6(b) of the measure exempt from this requirement all landlords who do not receive property for savings as the result of Proposition 13, residential units in transient facilities, units in medical, religious, educational or non-profit institutions, some governmentally owned or subsidized, and other enumerated classes of rental units.

The trial court found the digest incomplete in this regard, and changed it to read: "Proposition U further requires that a landlord, with certain exceptions, notify his or her tenants of how the rent reduction from Proposition 13 was calculated, and to make available for tenants a list of rents for all units in the property, as well as books, records and receipts to document any reasons for a proposed rent increase."

Finally, respondent claims that the section beginning with "A YES VOTE MEANS," is misleading for two reasons: (1) the term "rent control" rather than rent *rebate* was used, and (2) it refers to a requirement that tenants receive from landlords "the full rebate mandated by Proposition 13," when Proposition 13 did not mandate any such rebates.[10] It is respondent's position that Proposition U does not "control" rents because it does not set absolute limits on rent increases or maximum profits permitted. According to respondent's characterization, Proposition U is merely a "rebate" provision, allowing for unlimited rent increases if justified by costs incurred or inflation.

Appellants characterize respondent's protestations as semantic nitpicking, pointing out that the section "A YES VOTE MEANS" refers to both "rent control" and "rebates" in an attempt to strike a neutral position.

The trial court rewrote the section as follows: "A YES VOTE MEANS: If you vote yes, you want landlords to pass on to residential and many commercial tenants tax savings received as a result of Proposition 13, and you want landlords of property on which there has been a tax saving to be prevented from raising rents through December 1979, except for inflation or actual increased costs."

Two conclusions are evident from a comparison of the Committee's digest with the court's "Revised Analysis." First, the court's summary is more complete, accurate and unbiased—though perhaps a bit more technical or complex in its language. Second, while the Committee's digest is incomplete, particularly with regard to enumerated exceptions to the proposition's general rules, it clearly makes reference to all major points and subjects of the measure.

---

[10]The full text of this portion of the digest reads: "A YES VOTE MEANS: If you vote yes, you want *rents controlled* in San Francisco through December, 1979 and you want to require landlords to pass on to both commercial and residential renters the *full rebates* mandated by Proposition 13." (Italics added.)

The focus of the measure here is upon the rebate to tenants of tax savings realized by landlords as a consequence of state Proposition 13; subsequent rent increases are tied to increased actual costs or inflation. To be sure, the proposition enumerates exceptions to the general rules which it imposes; and many of those are not mentioned in the Committee's digest. However, the digest is but a simplification, and it accounts for the primary points and purposes of the measure.

In our view, the failure of the Committee's digest to account for all technical aspects of Proposition U does not, given its adequate coverage of the primary focus of the measure, render it inadequate. Faced with the difficult task of simplifying a complex proposal, the Committee drafted a summary which, if not all-encompassing, at least briefly described its major subjects. While the trial court's draft presented a more complete digest of the measure, that is not the test. As appellate decisions have often noted, "substantial compliance" is sufficient, and if reasonable minds may differ as to the sufficiency of the summary, it should be held sufficient. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra*, 22 Cal.3d 208, 243; *Vandeleur v. Jordan* (1938) 12 Cal.2d 71, 73 [82 P.2d 455].)

Even when viewed in the aggregate, the errors and misstatements cited by respondent neither ignore major points nor make the proposition misleading. Moreover, the digest referred to the complete text of the proposal, from which the voters could ascertain any exceptions to the rules summarized in the digest, and we must assume that the voters considered the text and thereby familiarized themselves with any omitted subsidiary matter. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra*, 22 Cal.3d 208, 243-244.)

Respondent relies primarily upon two cases, *Clark v. Jordan, supra*, 7 Cal.2d 248, and *Boyd v. Jordan, supra*, 1 Cal.2d 468, in which ballot summaries were declared insufficient. However, in both cases, certain *essential* features of the measures were omitted or inadequately stated, thereby making the summaries misleading. (*Clark v. Jordan, supra*, 7 Cal.2d at p. 251; *Boyd v. Jordan, supra*, 1 Cal.2d at pp. 472-473.) Such is not the case here.

We conclude that the Committee's ballot summary, while technically imprecise, omitted only auxilliary or subsidiary matters, fairly represented the measure and thus was in substantial compliance with the law. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of*

*Equalization, supra,* 22 Cal.3d 208, 243-244; *Fox etc. Corp.* v. *City of Bakersfield, supra,* 36 Cal.2d 136, 145; *Perry* v. *Jordan, supra,* 34 Cal.2d 87, 95; *Epperson* v. *Jordan, supra,* 12 Cal.2d 61, 71; *Biffle* v. *Social Welfare Board* (1951) 104 Cal.App.2d 446, 451-452 [231 P.2d 869].) However, while we find error in the trial court's order prohibiting distribution of the Committee's summary and preparation of its own "Revised Analysis" for dissemination, such error would not necessitate reversal even if this case were still of practical significance.

■ Injury is not presumed from error; it must be affirmatively shown. (*Continental Dairy Equip. Co.* v. *Lawrence* (1971) 17 Cal.App. 3d 378, 384 [94 Cal.Rptr. 887]; *Hoyt* v. *Los Angeles Metropolitan Transit Authority* (1962) 210 Cal.App.2d 534, 538 [26 Cal.Rptr. 666].) ■ Although the Committee's digest was satisfactory and could have been lawfully distributed to San Francisco voters, the trial court's "Revised Analysis"—which the voters received—was a more accurate and thorough summary. Thus, it cannot be said that appellants were damaged by the trial court's order. In fact, if anything, the goal of distributing an unbiased, complete summary of Proposition U—a goal which must interest appellants as much as respondent—was advanced, rather than hindered, by the actions of the trial court. Since no miscarriage of justice resulted from any error committed by the trial court, reversal of the judgment is not warranted. (Cal. Const., art. VI, § 13; Evid. Code, § 353; *Taylor* v. *Bell* (1971) 21 Cal.App.3d 1002, 1009 [98 Cal.Rptr. 855].)

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.