[No. A100742. First Dist., Div. One. July 18, 2003.]

MICHELLE L. HORNEFF, Plaintiff and Respondent, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and
Appellants.

## COUNSEL

Dennis J. Herrera, City Attorney, Randy Riddle and Rafal Ofierski, Deputy City Attorneys, for Defendants and Appellants.

Nielsen, Merksamer, Parrinello, Mueller & Naylor, John E. Mueller and James R. Parrinello for Plaintiff and Respondent.

## OPINION

**STEIN, J.**—The superior court granted a writ of mandate, pursuant to Elections Code section 9295[1] amending the digest prepared by the Ballot Simplification Committee of Proposition A, a revenue bond measure, submitted to the voters of The City and County of San Francisco (hereafter, the City) at the November 2002 municipal election. The City appeals, contending section 9295 does not authorize the revision of a digest that provides an impartial summary of the chief purpose and points of the measure and is neither false nor misleading. We shall conclude that the court erred in issuing the writ of mandate, but that the error does not require reversal.

---

[1] All subsequent statutory references are to the Elections Code unless otherwise indicated.

FACTS

*Proposition A*

The San Francisco Board of Supervisors submitted Proposition A to the voters for the November 5, 2002 election. It asked the voters whether the City should issue revenue bonds, or other forms of revenue financing, in a principal amount not to exceed $1,628,000,000, to pay for improvements to the City's water supply system. The proposition provided that the cost of repaying these bonds would be financed by an increase in water rates. It also provided that "the principal amount of the Bonds may be reduced if the City's Board of Supervisors determines the greatest economic value to San Francisco ratepayers will derive from having the San Francisco Bay Area Regional Water System Financing Authority finance, in whole or in part, those projects designed and intended in substantial part to improve the reliability of the City's regional water system." If the Authority does finance such projects, the Public Utilities Commission (PUC) would also be authorized to "impose a surcharge on retail water rates" to pay the retail water customer's share of the debt service on bonds issued by the Authority, and the operating expenses of the Authority.[2]

*Digest Prepared by Ballot Simplification Committee*

In accordance with San Francisco election law, a voter information pamphlet was prepared for the November 2002 election. (S. F. Municipal Elections Code (MEC), § 500.) For Proposition A the pamphlet included: (i) the City Attorney's statement or question for the measure; (ii) the City Controller's financial analysis; (iii) and a digest prepared by the Ballot Simplification Committee. (MEC, § 509(c) (2)–(4).) This digest consists of four sections: (1) "The Way It Is Now"; (2) "The Proposal"; (3) "A 'Yes' Vote Means"; and (4) "A 'No' Vote Means." (MEC, § 515(a).)

The digest prepared by the Ballot Simplification Committee explained, under the heading, "The Way It Is Now," that parts of San Francisco's existing water supply system were in need of repair or replacements. "The Proposal" portion of the digest stated that "Proposition [A] is a revenue bond that would authorize the City to borrow $1,628,000,000 to pay for improvements to its water system." It enumerated the categories of improvement the money would be used for, and stated that "[r]ates charged to water system customers in San Francisco would be increased over time to repay these bonds. San Francisco landlords could pass on to tenants in rent-controlled

---

[2] At the time the proposition was prepared by the board, the San Francisco Bay Area Regional Water System Financing Authority was an agency proposed by Senate Bill No. 1870.

units half the increase in water rates resulting from the bond. Suburban water system users would finance and pay for their share of improvements to the water system." Finally, the digest explained that a "Yes" vote means "you want the City to borrow $1,628,000,000 to make water system improvements, to be paid for with increased water rates." A "No" vote means "you do not want the City to borrow $1,628,000,000 for these purposes."

*Horneff's Petition and Court-Ordered Relief*

Two months before the November 2002 election, Michelle L. Horneff filed a petition for a peremptory writ of mandate and injunctive relief pursuant to section 9295. She alleged that the digest was "false, misleading, incomplete, unfair and prejudicial," because it omitted any reference to the provisions of Proposition A (1) permitting the principal amount of the bonds to be reduced if the Board of Supervisors determined that it would be more economical to have the Authority finance the improvements; and (2) authorizing the PUC, in that event, to "impose a surcharge on retail water rates" to pay the retail water customer's share of the debt service on bonds issued by the Authority and the operating expenses of the Authority. The City opposed the petition on the ground that section 9295 authorized the court to order an amendment or deletion of election material "only upon clear and convincing proof that the material in question is false, misleading, or inconsistent with the requirements of this chapter." The court issued a peremptory writ of mandate ordering the City to add the following sentence at the end of the section entitled "The Proposal:"

"If in the future the San Francisco Board of Supervisors determines that it is cheaper to pay for water system improvements by joining with suburbs to create a Regional Water Financing Authority, then a surcharge will be imposed on San Franciscans to pay for the additional costs including to pay for the operating expenses of the Authority."

The City complied with the order and filed a timely notice of appeal. Proposition A was approved by the voters.

ANALYSIS

Section 9295 is a preelection remedy. The City's appeal is arguably moot because the election has already taken place and Proposition A passed. Nevertheless, this court has the discretion to consider the merits if the appeal presents a question " 'capable of repetition, yet evading review' " (*Ferrara v. Belanger* (1976) 18 Cal.3d 253, 259 [133 Cal.Rptr. 849, 555 P.2d 1089]; *Hammond v. Agran* (1999) 76 Cal.App.4th 1181, 1186 [90 Cal.Rptr.2d 876]) or the issue is of continuing public interest. (*Patterson v. Board of*

*Supervisors* (1988) 202 Cal.App.3d 22, 27 [248 Cal.Rptr. 253] [after an election had taken place, this court applied the exception to mootness doctrine, to review writ ordering the deletion of portions of ballot arguments]; *Brennan v. Board of Supervisors* (1981) 125 Cal.App.3d 87, 90, fn. 2 [177 Cal.Rptr. 677] (hereafter *Brennan*) [this court applied the same exception to review, postelection, a writ requiring revision of digest prepared by Ballot Simplification Committee].) Respondent urges us not to apply this well-established exception to the mootness doctrine in this case. She argues that our prior decision in *Brennan, supra,* 125 Cal.App.3d 87 has settled the law concerning the requisite contents of a digest prepared by a Ballot Simplification Committee and the standard to be applied in determining whether a judicially ordered revision is appropriate. We decline to deem the case moot. The issue raised is a matter of continuing public interest, and the arguments in this appeal demonstrate the need to clarify our holding in *Brennan.*

*Standard to be Applied for Mandamus Relief under Section 9295*

*Brennan, supra,* 125 Cal.App.3d 87, was also an appeal of an order in a mandamus proceeding revising a Ballot Simplification Digest. Respondent interprets our decision in *Brennan* to stand for the proposition that the trial court has a "broad" power of judicial review which includes "the right of the trial court to modify Digests that are not ... complete." While we did state in *Brennan* that many of the trial court's revisions to the digest rendered it more complete, we *held* that it was *error* for the court to amend the digest solely for that purpose.[3] Respondent's assertion that the court has broad power to revise a digest prepared by the Ballot Simplification Committee to make it more complete undoubtedly derives from our comparison in *Brennan* of the trial court's revisions with the digest. While we agreed that some of the statements in the digest were not complete, and that the court's revisions improved it (*id.* at pp. 93–95), our analysis was never intended as an endorsement of the proposition that the trial court may revise a digest that is not false or misleading and which fairly and impartially states the chief purpose and points of the measure. Rather, our analysis illustrated that, although the revisions *should not have been made*, the error did not require a postelection reversal because the effect of the revision was only to create a more accurate and thorough summary. (*Id.* at p. 97.)

---

[3] "In our view, the failure of the Committee's digest to account for all technical aspects of Proposition U does not, given its adequate coverage of the primary focus of the measure, render it inadequate. Faced with the difficult task of simplifying a complex proposal, the Committee drafted a summary which, if not all-encompassing, at least briefly described its major subjects. While the trial court's draft presented a more *complete* digest of the measure, *that is not the test.*" (*Brennan, supra,* 125 Cal.App.3d at p. 96, italics added.)

■ The correct standard of judicial review in determining whether to grant a request to amend or delete material in a Ballot Simplification Digest is the same as the principles applied to judicial review of challenges to titles and summaries prepared by the Attorney General and Legislative Analyst for statewide initiatives or referenda.[4] The test is not whether the digest is *complete*, but rather whether it contains "a statement of the major objectives or 'chief purposes and points' of the measure." (*Brennan, supra,* 125 Cal.App.3d at p. 92.) It need not refer to " 'auxiliary or subsidiary' " matters, nor need it " 'contain a summary or index of all of the measure's provisions. Within certain limits what is and what is not an important provision is a question of opinion. Within those limits the opinion of the [Ballot Simplification Committee] should be accepted by this court.' " (*Id.* at p. 92.) Moreover, " 'substantial compliance' is sufficient, and if reasonable minds may differ as to the sufficiency of the summary, it should be held sufficient. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 243 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Vandeleur v. Jordan* (1938) 12 Cal.2d 71, 73 [82 P.2d 455].)' " (*Brennan, supra,* 125 Cal.App.3d at p. 96.) Of course, "[t]he Attorney General's statement must be true and impartial, and not argumentative or likely to create prejudice for or against the measure. [Citation.] The main purpose of these requirements is to avoid misleading the public with inaccurate information. [Citations.]" (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra,* 22 Cal.3d at p. 243.)

■ The ballot title and summary must reasonably inform the voter of the character and real purpose of the proposed measure. (*Tinsley v. Superior Court* (1983) 150 Cal.App.3d 90, 108 [197 Cal.Rptr. 643], citing *Boyd v. Jordan* (1934) 1 Cal.2d 468, 472 [35 P.2d 533].) Still, " '[o]nly in a clear case should a title ... [or summary] be held insufficient.' " (*Brennan, supra,* 125 Cal.App.3d at pp. 92–93, quoting *Epperson v. Jordan* (1938) 12 Cal.2d 61, 66 [82 P.2d 445].)

Since *Brennan*, the courts have consistently applied this standard to assess the sufficiency of ballot analyses or summaries of measures submitted to the voters. (See, e.g., *People ex rel. Kerr v. County of Orange* (2003) 106 Cal.App.4th 914, 936 [131 Cal.Rptr.2d 274] [citing *Brennan* for standard to determine whether analysis of ballot measure was adequate]; *People v. Lungren v. Superior Court* (1996) 48 Cal.App.4th 435, 439 [55 Cal.Rptr.2d 690] [the court held the same standard set forth in *Brennan* applies to a

---

[4] Section 9002 codifies the requirement that the Attorney General prepare a "title and summary of the chief purpose and points" of a proposed measure. Section 9051 provides that the ballot title "shall give a true and impartial statement of the purpose of the measure in such language that the ballot title shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure." The official summary and title must be included in the ballot pamphlet. (§ 9086, subd. (a).) Section 9087 further requires the Legislative Analyst to prepare an "impartial analysis of the measure" in "clear and concise terms, so as to be easily understood by the average voter."

peremptory writ of mandate requiring amendment or deletion of an official summary prepared by the Attorney General pursuant to § 9092].) Nothing in our opinion in *Brennan* should be construed as expanding this well-established standard to permit judicial revision of an impartial digest that fairly states the chief purpose and points of a measure, simply to render it more complete.[5]

Nor are we persuaded by respondent's contention that our review of the trial court's order should be subject to the deferential abuse-of-discretion standard. ▇ The terms of section 9295 do not vest the trial court with a wide range of discretion. Instead, relief may be granted *"only* upon clear and convincing evidence" that the challenged election material is "false or misleading or otherwise inconsistent with the provisions" applicable to municipal elections. Although we did not explicitly state the appellate standard of review in *Brennan, supra,* 125 Cal.App.3d 87, in substance, our analysis applied a de novo standard of review to conclude that the court erred in ordering the revisions in that case. (See also *Lungren v. Superior Court, supra,* 48 Cal.App.4th 435 [court implicitly adopted de novo standard of review to find trial court "erred" in ordering the Attorney General to revise the ballot title and label for Proposition 209 to reflect that the purpose of the measure was to prohibit affirmative action programs].)[6]

*Application of Standard for Mandamus Relief Under Section 9295 to the Digest for Proposition A*

The digest of Proposition A prepared by the Ballot Simplification Committee fairly and accurately informed the voters that the proposition was a revenue bond measure, and that its purpose was to authorize the City to borrow money to pay for improvements to the water supply system. It specified the maximum amount of the bonds authorized, and that any debt incurred would be repaid though an increase in water rates. The digest did not

---

[5] Respondent, in reliance upon a single sentence in *Huntington Beach City Council v. Superior Court* (2002) 94 Cal.App.4th 1417 [115 Cal.Rptr.2d 439], suggests that the standard we articulated in *Brennan* applies only to arguments for or against a measure and that a different level of scrutiny applies to titles and summaries of measures. The *Huntington* court did generally state that arguments for or against a measure are subject to "different standards" than the ballot title and summary of a measure. (*Id.* at p. 1433.) Viewed in context, however, the court was referring to the obvious distinction that an *argument* need not be impartial, whereas, as we stated in *Brennan,* a ballot title and summary must be.

[6] We would reach the same conclusion under abuse-of-discretion standard. To the extent that the trial court adopted an interpretation of *Brennan, supra,* 125 Cal.App.3d 87, allowing it to order revisions to the digest that, in the trial court's opinion, made it more "complete," it applied an erroneous legal standard and thereby abused its discretion.

include any reference to the possibility that the Board of Supervisors could decide to finance the improvements through the yet-to-be-established Authority and, in that event, the debt incurred, including a share of the operating costs of the Authority, would be repaid by a "surcharge" on water rates.[7] Since none of the statements included in the digest were affirmatively false or misleading, the question whether revision to include the omitted material was proper turns on a determination whether the omitted material was a chief point or purpose of the measure, or merely "auxiliary or subsidiary" information. (See *Brennan, supra,* 125 Cal.App.3d at p. 96; see also *People ex rel. Kerr v. County of Orange* (2003) 106 Cal.App.4th 914, 936 [131 Cal.Rptr.2d 274].)

The City, in opposition to the petition, submitted the declaration of John Odell, Chair of the Ballot Simplification Committee. He declared that the committee had considered whether the digest should, in addition to explaining that Proposition A authorized the issuance of bonds to pay for improvements to the water system and repayment though an increase in water rates, refer to the possibility that if financing for the improvements were obtained through a regional water system financing authority, if it were established by state law and if the Board of Supervisors decided to participate in it, then an increase in water rates would be used to repay the authority.[8] The committee concluded "that level of detail would be confusing to the voter and impossible to capture within the confines of the 300-word limit. It was the committee's decision that the critical fact that voters must know is that rates charged to San Francisco water system customers would be increased over time to repay the bonds—not that there may be two mechanisms for issuing the bonds." The committee decided to state that the bonds would be paid for by increased water rates instead of using the word "surcharge" because "that term may be difficult for individuals who read at or below the eighth grade reading level."[9]

Respondent contends that reference to the possibility that some or all of the financing for improvements to the water supply system might be obtained instead through a regional authority was not "auxiliary or subsidiary,"

---

[7] The revision of the digest to include this omitted information, arguably, rendered it more complete; however, as we have explained, that is not the test for mandamus relief ordering revision of election materials pursuant to section 9295.

[8] The state law authorizing the creation of such an authority, Senate Bill No. 1870, had not yet been approved, nor had the Board of Supervisors determined that financing through the authority would be to the economic advantage of City ratepayers.

[9] The digest prepared by the Ballot Simplification Committee must be in "closest proximity to the eighth grade level of readability as possible." It may not exceed 300 words, unless the Committee determines that the complexity of the measure requires a longer digest. (MEC, § 515(b) and (c).)

because the fiscal impact of a measure is always "crucial" information. Yet she does not explain why or how it made a difference in terms of the fiscal impact of the measure, or in terms of the impact on ratepayers, whether the debt was owed to bondholders or to the Authority. Respondent also takes issue with the omission of the term "surcharge" and asserts that imposition of a "surcharge" must have been a key point of Proposition A because the term was included in the title and the text of the ballot question. The digest's substitution of the phrase "increase in water rates" communicated the same point, in less technical language, and is consistent with the local election law specifying that the digest should be aimed, as closely as possible, at the eighth grade reading level. (MEC, § 515 (b) and (c).) The inclusion of the word "surcharge" in the title of the measure and in the ballot question further illustrates that the terms "surcharge" and "increase in water rates" are interchangeable.

Respondent's arguments demonstrate only that there was room for difference of opinion as to whether the omitted material was auxiliary or subsidiary to the chief purpose and points of Proposition A. As we explained in *Brennan, supra* 125 Cal.App.3d 87, "[w]ithin certain limits what is and what is not an important provision is a question of opinion. *Within those limits the opinion of the [Ballot Simplification Committee] should be accepted by this court.*' " (*Id.* at p. 92, italics added.) Moreover, " 'substantial compliance' is sufficient, and if reasonable minds may differ as to the sufficiency of the summary, it should be held sufficient. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* [1978] 22 Cal.3d 208, 243 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Vandeleur v. Jordan* (1938) 12 Cal.2d 71, 73 [82 P.2d 455].)" (*Brennan, supra,* 125 Cal.App.3d at p. 96.)

We conclude that the omission of any reference to the contingency that financing for the improvements to the water system might be obtained through the Authority, and the omission of the term "surcharge," did not result in a failure of the digest to present the chief points and purposes of Proposition A fairly and accurately. The digest advised the voter that the cost of any bonds, or other revenue financing, issued to pay for improvements to the water system would be paid for by an increase in water rates. Whether the debt incurred was owed directly to bondholders, or to a regional authority, the critical point was that the debt incurred would be repaid by an increase in the water rates. Reference to the possibility that the board, if it determined that it would be economically advantageous, could elect to obtain financing for some or all of the improvements through the Authority, which would be paid for by a "surcharge," was an "auxiliary or subsidiary" matter that the committee was not required to include in its digest. The Ballot Simplification Digest, as its title suggests, is but a simplified summary of the measure, and is not intended to provide a complete catalogue or index of every detail.

(*Brennan, supra,* 125 Cal.App.3d at p. 96;*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra,* 22 Cal.3d at p. 243; see also *People ex rel. Kerr v. County of Orange, supra,* 106 Cal.App.4th 914, 936 ["county counsel is not required to write—indeed should not write—a law review article meditating on every last nuance and wrinkle posed by a ballot measure."]; *Epperson v. Jordan, supra,* 12 Cal.2d 61, 70–71 ["We have carefully read each of the nine objections raised by petitioners to the present title and *while several of these embody some very important matters,* we think that all of them are subsidiary and auxiliary to the chief purpose and points of the proposal as heretofore set forth"].) Moreover, the City Attorney's statement, which appeared next to the digest, expressly stated the possibility that the City would obtain financing through the Authority as an alternative to raising it directly through issuing bonds and the same information appeared in the full text of Proposition A. Thus, as in *Brennan,* despite the alleged omissions, the digest "neither ignore[s] major points nor make[s] the proposition misleading. Moreover, the digest referred to the complete text of the proposal, from which the voters could ascertain any exceptions to the rules summarized in the digest, and we must assume that the voters considered the text and thereby familiarized themselves with any omitted subsidiary matter. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra,* 22 Cal.3d 208, 243–244.)" (*Brennan, supra,* 125 Cal.App.3d at p. 96.)

The court, therefore, erred by ordering a revision to the digest to include the omitted auxiliary or subsidiary material. The error, however, does not require reversal. The purpose of section 9295 is to establish a preelection procedure for the timely correction of election materials. Since there is no contention that the court's error tainted the fairness of the election, or otherwise resulted in a miscarriage of justice, at this postelection stage no purpose would be served by reversing, or vacating the court's order.[10]

---

[10] Despite our disposition affirming the judgment, the City has, in substance, prevailed in its contention that the digest, as originally prepared, was adequate and the revision should not have been ordered by the trial court. (See *Brennan v. Board of Supervisors* (1984) 153 Cal.App.3d 193, 197–198 [200 Cal.Rptr. 192] [despite affirmance of judgment, our prior decision held that the court erred by requiring revision of ballot digest, and therefore plaintiff was not the successful party, nor did plaintiff's lawsuit vindicate an important right affecting the public interest].)

## CONCLUSION

The judgment is affirmed

Marchiano, P. J., and Margulies, J., concurred.