[No. H038126. Sixth Dist. Apr. 10, 2012.]

KAREN McDONOUGH et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
CITY OF SAN JOSE et al., Real Parties in Interest.

COUNSEL

Remcho, Johansen & Purcell, Robin B. Johansen, Thomas A. Willis; Wylie, McBride, Platten & Renner, Christopher E. Platten; Carroll, Burdick & McDonough and Gregg McLean Adam for Petitioners.

No appearance for Respondent.

Meyers, Nave, Riback, Silver & Wilson, Arthur A. Hartinger, Linda M. Ross, Jennifer L. Nock; Miguel Marquez, County Counsel, and Susan Swain, Lead Deputy County Counsel, for Real Parties in Interest.

OPINION

**ELIA, Acting P. J.**—The petitioners in this proceeding are four registered voters and taxpayers in Santa Clara County. All are either present or retired employees of the City of San Jose, and two are residents and voters in San Jose. Petitioners seek an order overturning the superior court's denial of their mandate petition challenging the ballot title and ballot question for Measure B, which is to be placed on the ballot for the June 5, 2012 election. Petitioners contend that both the current ballot title, "PENSION REFORM," and the ballot question are impermissibly partisan and misleading.

Real parties in interest are the City of San Jose (City), the city council (which adopted the ballot question and title), the city clerk (sued in his official capacity), and the Registrar of Voters for Santa Clara County (sued in his official capacity).

Recognizing the urgency of the matter, we issued a *Palma* notice (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180 [203 Cal.Rptr. 626, 681 P.2d 893]), advising the parties that this court was considering issuing a peremptory writ of mandate in the first instance.[1] We prohibited the submission of the ballot title and question to the printer until

---

[1] In limited situations, an appellate court may issue a peremptory writ in the first instance without issuance of an alternative writ or order to show cause, and without providing an opportunity for oral argument. (Code Civ. Proc., § 1088; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1252–1253 [82 Cal.Rptr.2d 85, 970 P.2d 872].) "A court may issue a peremptory writ in the first instance ' "only when petitioner's entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue—for example, when such entitlement is conceded or when there has been clear error under well-settled principles of law and undisputed facts—or where there is an unusual urgency requiring acceleration of the normal process. . . ." [Citation.]' " (*Lewis v. Superior Court, supra,* 19 Cal.4th at p. 1241, quoting *Alexander v. Superior Court* (1993) 5 Cal.4th 1218, 1223 [23 Cal.Rptr.2d 397, 859 P.2d 96].)

further order of this court. We also invited, and have received, expedited opposition from real parties in interest and a reply from petitioners. Having considered the parties' positions on the appropriateness of the ballot title and question, we agree with petitioners that the ballot title and text are impermissibly partisan, and we will therefore issue a peremptory writ in the first instance.

*Background*

On March 6, 2012, the city council adopted resolution No. 76158, to place a proposed amendment to the city charter on the June 5, 2012 election ballot. The proposed measure, designated as "Measure B," would modify retirement benefits for current employees and retirees and establish a more limited retirement plan for future employees.

Citing Elections Code sections 9295 and 13314,[2] petitioners sought a writ of mandate in superior court, alleging that the ballot question and the city clerk's "Impartial Analysis" were misleading and biased in favor of passage, rather than neutral as required by sections 10403, 9051, and 9280.[3]

On April 4, 2012, after expedited briefing, the superior court issued its order granting some relief by approving two stipulated amendments.[4] It further found, however, that petitioners had "failed to establish by clear and convincing proof that the challenged language was false, misleading, or not partial [*sic*]." Accordingly, the court denied the balance of the petition.

---

[2] All further statutory references are to the Elections Code. Section 13314 permits a voter to seek a writ of mandate "alleging that an error or omission has occurred, or is about to occur, in the placing of a name on, or in the printing of, a ballot, sample ballot, voter pamphlet, or other official matter, or that any neglect of duty has occurred, or is about to occur. [¶] (2) A peremptory writ of mandate shall issue only upon proof of both of the following: [¶] (A) That the error, omission, or neglect is in violation of this code or the Constitution. [¶] (B) That issuance of the writ will not substantially interfere with the conduct of the election." (*Id.*, subd. (a).)

[3] Section 10403 requires a ballot question to "conform to this code governing the wording of propositions submitted to the voters at a statewide election." Section 9051 provides that in a statewide election the ballot title and summary of an initiative or referendum must be a "true and impartial statement of the purpose of the measure in such language that the ballot title and summary shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure." (*Id.*, subd. (c).) Section 9280 calls for an "impartial analysis" to be prepared by the city attorney when a city measure has qualified for the ballot.

[4] The measure as originally drafted described one of the proposed benefit changes as "reform disability retirements to prevent abuses." The stipulated amendment replaced this phrase with "modify disability retirement procedures." The stipulation also included alteration of the city clerk's Impartial Analysis, which originally stated, "Measure B would add Charter article XV-A to establish controls over employee retirement contributions and benefits." The amendment inserted the word "additional" between "establish" and "controls."

## Discussion

The current version of the challenged measure bears the title "PENSION REFORM" and posits the question as follows: "To protect essential services, including neighborhood police patrols, fire stations, libraries, community centers, streets and parks, shall the Charter be amended to reform retirement benefits of City employees and retirees by: increasing employees' contributions, establishing a voluntary reduced pension plan for current employees, establish pension cost and benefit limitations for new employees, modify disability retirement procedures, temporarily suspend retiree COLAs during emergencies, require voter approval for increases in future pension benefits?"

Petitioners contend that the ballot question drafted by the city council, including its title, violates sections 10403 and 9051 "because it is not impartial, but instead is written in a manner that would greatly prejudice voters in favor of the measure."[5] The title, they argue, "casts the initiative in a positive light and is a powerful cue to the voters to vote for it." The first sentence of the ballot question "presents voters with the Hobson's choice of either preserving [*sic*] essential services or lowering pension benefits."

■ When a measure is to be placed on the ballot for an upcoming municipal election, it must be subjected to a 10-day public examination period, during which any voter in the jurisdiction may seek a writ of mandate to delete or amend the language of the measure. (§ 9295, subd. (b)(1).) The writ of mandate, however, may be issued "only upon clear and convincing proof that the material in question is false, misleading, or inconsistent with the requirements of this chapter, and that issuance of the writ or injunction will not substantially interfere with the printing or distribution of official election materials as provided by law." (§ 9295, subd. (b)(2); see also §§ 9092 [same writ review procedure and standard for statewide election materials], 9190 [same writ review procedure and standard for county election materials].)

In their opposition, real parties in interest argue that any delay caused by alteration of the ballot question would substantially interfere with the conduct of the June election. However, in order to attend to the urgent issues presented by this matter we were compelled to stay the superior court's April 4, 2012 ruling, which we accomplished the following day, April 5, 2012, by directing that the challenged ballot materials not be submitted to the printer "until further order of this court." We have accelerated the briefing process by allowing each party only one day to submit points and authorities, and we have expedited our own resolution of the issues presented. Thus, any delay

---

[5] Petitioners do not raise any issue regarding the flawed sentence structure in the remaining text of the proposed ballot question.

beyond our April 5 stay order has been kept to a minimum. While we recognize real parties in interest's legitimate concern for the ability of the registrar of voters to prepare and distribute ballot materials in time for the June election,[6] we cannot elevate that concern above our duty to address the important substantive questions raised in this petition.

■ The constitutional guarantees of equal protection and freedom of speech as applied to public elections "mean, in practical effect, that the wording on a ballot or the structure of the ballot cannot favor a particular partisan position." (*Huntington Beach City Council v. Superior Court* (2002) 94 Cal.App.4th 1417, 1433 [115 Cal.Rptr.2d 439]; cf. *Horneff v. City & County of San Francisco* (2003) 110 Cal.App.4th 814, 822–823 [2 Cal.Rptr.3d 79] [notwithstanding omissions in digest of bond measure, substantial compliance was achieved, as it presented the chief points and purposes of the proposition "fairly and accurately"].) The ballot title, for example, "must not be false, misleading, or partial to one side. . . . [¶] . . . We understand 'partial' to mean [that] the council's language signals to voters the council's view of how they should vote, or casts a favorable light on one side of the [issue] while disparaging the opposing view." (*Martinez v. Superior Court* (2006) 142 Cal.App.4th 1245, 1248 [48 Cal.Rptr.3d 660] (*Martinez*); see also § 9051, requiring ballot title in statewide measure to be "true and impartial.") We independently examine the question of whether the ballot title "substantially complies" with that standard. (*Martinez, supra*, 142 Cal.App.4th at p. 1248.) As in the case of statewide initiatives, the drafter is afforded "considerable latitude" in composing the ballot title, and we must presume its language to be accurate. (*Yes on 25, Citizens for an On-Time Budget v. Superior Court* (2010) 189 Cal.App.4th 1445, 1452 [118 Cal.Rptr.3d 290].) "Only in a clear case should a title so prepared be held insufficient. Stated another way, if reasonable minds may differ as to the sufficiency of the title, the title should be held to be sufficient." (*Epperson v. Jordan* (1938) 12 Cal.2d 61, 66 [82 P.2d 445]; see *Yes on 25, Citizens for an On-Time Budget v. Superior Court, supra*, 189 Cal.App.4th 1445, 1453.)

We believe that the ballot title, "PENSION REFORM," is such a "clear case." The word "reform" in both definition and connotation evokes a removal of defects or wrongs.[7] By combining this charged word with "pension" in the title, all in capital letters, the city council has implicitly

---

[6] The registrar of voters has represented that the deadline to submit any amendment of the election materials is April 6—a date that has, of course, already passed. As petitioners point out, however, April 16 is the date the registrar "needs to convey its approval to the two printing vendors."

[7] The online Oxford reference dictionary defines the verb "reform" as meaning to "make or become better by the removal of faults and errors," to correct, or to "abolish or cure (an abuse or malpractice)." The noun "reform" is defined as an "improvement" or "the removal of faults or abuses, esp. of a moral or political or social kind." (Oxford American Dict. of Current

characterized the existing pension system as defective, wrong, or susceptible to abuse, thereby taking a biased position in the very titling of the measure itself. The title should be altered to read "PENSION MODIFICATION" to eliminate the use of the argumentative word "reform." (Cf. *Huntington Beach City Council v. Superior Court, supra,* 94 Cal.App.4th at p. 1433 [word "exemption" in ballot title insufficiently neutral by connoting unfair influence and special treatment]; cf. *Amador Valley Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 243 [149 Cal.Rptr. 239, 583 P.2d 1281] ["though technically imprecise," title and summary substantially complied with purpose and points of state initiative].)

The suggestion of a wrong that needs to be corrected is repeated in the text, where the measure asks whether the city charter should be amended "to *reform*" the retirement benefits of City employees and retirees. That language should be changed, as it was in the original phrase "reform disability retirements to prevent abuses." The superior court's substitution of the word "modify" for "reform" in that phrase was apt (see fn. 4, *ante*), and we agree with petitioners that "modify" is appropriate in the cited instance as well.

The text of the ballot question also contains a more extensive flaw rendering it inconsistent with the applicable Elections Code provisions. The central objective of Measure B appears to be the reduction of pension and retirement costs paid by the City. The introductory phrase, however, suggests that the proposed measure is designed principally to "protect essential services, including neighborhood police patrols, fire stations, libraries, community centers, streets and parks." In other words, it promotes Measure B by implying that if voters do not endorse pension reform by passing the measure, the public will lose fire and police protection and be deprived of popular community resources. (Cf. *Citizens for Responsible Government v. City of Albany* (1997) 56 Cal.App.4th 1199, 1225–1228 [66 Cal.Rptr.2d 102] [partisan language in ballot question on proposed measure was a "sufficiently egregious deviation from the prescribed form to fall outside the limits of substantial compliance"].)

English, Oxford University Press, 1999 <http://www.oxfordreference.com/views/ENTRY.html?subview=Main&entry=t21.e25558>.) The American Heritage Dictionary uses similar definitions: "To improve by alteration, correction of error, or removal of defects; put into a better form or condition. . . . To abolish abuse or malpractice . . . . To put an end to (a wrong). . . . A change for the better; an improvement. . . . Correction of evils, abuses, or errors . . . ." (American Heritage Dict. (3d ed. 1997) p. 1147.) The Random House Dictionary likewise defines the noun "reform" as "the improvement or amendment of what is wrong, corrupt, unsatisfactory, etc." (Random House Dict. of the English Language (2d ed. 1987) p. 1621.)

Real parties in interest maintain, however, that preservation of services is indeed the purpose behind Measure B, and thus the statement of purpose in the ballot question is accurate and not misleading. They state that before passing resolution No. 76158 the city council received reports indicating that the "rising costs of employee pension benefits" contribute to the City's budget deficits and a corresponding reduction in "key City services." These points, however, properly belong in the ballot arguments in favor of the measure, not in the ballot question, which must be cast in neutral, unbiased language. Even if the preservation of City services and resources is a compelling reason to vote in favor of Measure B, the advocacy inherent in the introductory language of the ballot question is partisan and prejudicial. Consequently, the ballot question must be amended to conform to the standards of impartiality required by the Elections Code and the City's own charter.[8]

## Disposition

Let a peremptory writ of mandate issue directing respondent court to vacate its April 4, 2012 order to the extent that it denied the petition for writ of mandate, and to enter a new order granting the petition and compelling respondents below to amend the ballot title and ballot question for Measure B, as follows: (1) change the ballot title to "PENSION MODIFICATION"; (2) delete the introductory phrase in the ballot question, beginning with "To protect essential services" and ending with "streets and parks"; and (3) change the word "reform" in the text of the ballot question to "modify."

The temporary stay order issued by this court on April 5, 2012, is vacated, and, in its place, the court issues the following stay order which shall remain in effect until this decision is final for purposes of review: The ballot title and ballot question approved by the San Jose City Council in resolution No. 76158 shall not be submitted to the printer for the June 5, 2012 election unless the ballot title and ballot question are amended to read as follows: "PENSION MODIFICATION

"Shall the Charter be amended to modify retirement benefits of City employees and retirees by: increasing employees' contributions, establishing a voluntary reduced pension plan for current employees, establish pension cost and benefit limitations for new employees, modify disability retirement

---

[8] Section 1602 of the City's charter generally requires all municipal elections to be held "in accordance with the provisions of the Elections Code."

procedures, temporarily suspend retiree COLAs during emergencies, require voter approval for increases in future pension benefits?" This opinion is final immediately as to this court. (Cal. Rules of Court, rule 8.490(b)(3).) Costs are awarded to petitioners.

Mihara, J., and Duffy, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.