Filed 6/2/14  Green v. Logan CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| HARLAN GREEN, | B248773 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS138340) |
| v. | |
| DEAN LOGAN, as Registrar-Recorder/County Clerk, etc., | |
| Defendant and Respondent; | |
| _____ | |
| COUNTY OF LOS ANGELES et al., | |
| Real Parties in Interest and Respondents. | |

APPEAL from the judgment of the Superior Court of Los Angeles County.  Ann I. Jones, Judge.  Affirmed.

Huskinson, Brown & Heidenreich, David W.T. Brown, and Paul E. Heidenreich for Plaintiff and Appellant.

Nossaman, Lloyd W. Pellman, Winfield D. Wilson, and Stephen P. Wiman for Defendant and Respondent, and Real Parties in Interest and Respondents.

\* \* \* \* \* \* \* \* \* \*

Plaintiff and appellant Harlan Green, a resident and voter in the County of Los Angeles (County), filed this action seeking to set aside the election results for two county measures, Measure H and Measure L, placed on the ballot by real party in interest and respondent County in the June 5, 2012 general election. The trial court sustained, without leave to amend, the demurrer to plaintiff's first amended pleading and entered a judgment of dismissal from which plaintiff now appeals. Plaintiff primarily contends the trial court erred in dismissing the action as the first amended pleading stated facts showing Measure H and Measure L were unconstitutional, the ballot and election materials for the two measures were misleading and resulted in the effective disenfranchisement of voters, and sufficient grounds were pled to support writ relief and declaratory relief related to the two measures. We conclude there are no grounds for reversing the judgment of dismissal, and therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

We summarize the material facts alleged in the operative pleading, as well as the incorporated exhibits which consisted of the challenged ballot and election materials.

On the June 5, 2012 ballot, Measure H was titled "Los Angeles County Hotel Occupancy Tax Continuation Measure" and sought a vote on the following proposition: "Shall the existing unincorporated county hotel room tax be readopted to ratify, continue, and update the existing ordinance at the current rate of 12 percent to fund essential County general fund services, such as parks, libraries, senior services, and law enforcement; to continue exempting hotel stays longer than 30 days, to add exemptions for emergency shelter referrals, and for individuals on official government business pursuant to federal law?" Measure H is referred to by the parties as the "Hotel Tax."

Measure L was titled "Los Angeles County Landfill Tax Continuation Measure" and sought a vote on the following proposition: "Shall Los Angeles County's existing tax on landfills be readopted to ratify and continue the existing 10 percent tax on landfill operators' gross receipts from waste disposal in landfills in the unincorporated county, to fund essential general fund services, such as parks, libraries, senior services, and law enforcement; and to update the administrative appeal process, and clarify definitions to

2

ensure the tax is properly calculated?" Measure L is referred to by the parties as the "Landfill Tax."

The Hotel Tax was originally enacted in 1964 as ordinance No. 8607. (L.A. County Mun. Code, § 4.72.010.) In 1990, the Board of Supervisors for the County (Board) authorized an increase of the Hotel Tax to 12 percent, from its previous rate of 10 percent. (§ 4.72.430.) The increase became effective in 1991 and assessments and collections of the tax at the new rate began thereafter. The Hotel Tax is also commonly referred to as a transient occupancy tax, and is a general tax imposed on occupants of hotels and motels in the unincorporated areas of the County, subject to certain exemptions.

The Landfill Tax was originally enacted by the Board in December 1990. (L.A. County Mun. Code, § 4.63.010.) The Landfill Tax is a general tax imposed on operators of landfills in the unincorporated areas of the County at the rate of 10 percent of gross receipts.

Defendant and respondent Dean Logan was appointed as the County's Registrar-Recorder and County Clerk in July 2008. Real party in interest and respondent John Krattli was acting County Counsel in 2012 with the responsibility for drafting and analyzing the propriety of ballot and election materials for the County. Real party in interest and respondent Board authorized both County measures for placement on the June 5, 2012 ballot.

The "Impartial Analysis of Measure H" provided, in relevant part, as follows:

"Approval of Measure H would amend and readopt an existing County ordinance to authorize continued, and ratify past, collection of a Transient Occupancy Tax ('Hotel Tax'), at a rate of 12%, on occupants of hotels and motels within the unincorporated area of the County of Los Angeles.

"The Hotel Tax is a general tax which provides funding for essential government services including parks, libraries, senior services, law enforcement, and other general fund services. The Hotel Tax would continue to be imposed on every temporary, or transient, occupant of a hotel, motel or other place of lodging within the unincorporated

3

area of the County, and would be imposed at the current rate of 12%, which rate was adopted by ordinance by the Los Angeles County Board of Supervisors on December 18, 1990.

"This measure clarifies the definition of 'transient' to exempt any person occupying space in a hotel or motel for a period of longer than 30 days upon written agreement[;] emergency shelter referrals[;] and employees of federally-related agencies who are travelling on official government business.

"The current Hotel Tax rate of 12% has been in effect since January 1991. From August 1983 until January 1991, the Hotel Tax rate was 10%. The present Hotel Tax rate is the subject of existing litigation. An adverse decision in that litigation may result in reverting the Hotel Tax to its pre-1991 rate of 10%, which would reflect a reduction of approximately $2.1 million per year in general funds, and may also result in refunds of 2% of the tax paid to those persons who occupied hotel or motel rooms in the unincorporated area during certain periods of time.

"Approval of this measure ratifies the current rate and approves the past collection of the Hotel Tax from transients who occupied hotels and motels in the unincorporated area of the County of Los Angeles.

"This measure requires a majority vote of the qualified voters in the County of Los Angeles who cast votes in the election."

An argument in favor of the measure was submitted by various County officials, including the then-Chairman of the Board, stating that a change in state law "requires County voters to ratify this tax in order to maintain it at its current rate." The ballot materials indicated that no argument against the measure was submitted. The full text of the proposed amended ordinance was included in the election materials.

The "Impartial Analysis of Measure L" provided, in relevant part, as follows:

"Approval of Measure L would amend and readopt an existing County ordinance to authorize continued collection of the Business License Tax on Disposal Facilities ('Landfill Tax'). The measure would additionally ratify past collections. The existing

4

Landfill Tax rate is 10% of gross receipts, imposed on operators of landfills in the unincorporated area of the County of Los Angeles.

"The Landfill Tax is a general tax which provides funding for essential government services such as parks, libraries, senior services, law enforcement, and other general fund services. The Landfill Tax would continue to be imposed on operators and proprietors of waste disposal facilities within the unincorporated area of the County, and would be imposed at the current rate of 10% of the gross receipts collected, which rate was adopted by ordinance and approved by the Los Angeles County Board of Supervisors on January 22, 1991. [¶] . . . [¶]

"The Landfill Tax has been in effect since January 1991 at the current rate of 10% of gross receipts. Subsequent state court decisions have found that voter approval may be required for certain taxes imposed after 1990. Should the County be sued, an adverse decision could place the Landfill Tax revenues at risk, resulting in a reduction in general funds.

"Approval of this measure ratifies the current rate and approves the past collection of the Landfill Tax from operators of landfills and waste disposal facilities in the unincorporated area of the County of Los Angeles.

"This measure requires a majority vote of the qualified voters in the County of Los Angeles who cast votes in the election."

An argument in favor of the measure was submitted by various County officials, including the then-Chairman of the Board, stating that a change in state law "requires County voters to ratify this tax in order to maintain it at its current rate." It further stated that if the measure was not approved "the tax could be completely eliminated, and the County would have to cut those services on which County residents depend." The ballot materials indicated that no argument against the measure was submitted. The full text of the proposed amended ordinance was included in the election materials.

Both county measures were passed by over 60 percent of the voting electorate in the June 5, 2012 election.

Plaintiff, a resident and voter in the County, filed this postelection contest seeking to set aside the election results for both the Hotel Tax and the Landfill Tax. The operative first amended "Statement of Election Contest and Petition for Writ of Mandate" contained six causes of action: (1) the first cause of action for "Malconduct" in violation of Election Code section 9160; (2) the second cause of action for "Constitutional Violations," including denial of due process and free speech; (3) the third cause of action for a writ of mandate directing the setting aside of the election results for both measures on the grounds they violated both Proposition 62 and Proposition 218; (4) the fourth cause of action for a writ of mandate pursuant to Code of Civil Procedure section 1085 striking the election results for Measure L, and/or striking the ratification clause set forth in the ordinance at County Municipal Code section 4.63.180; (5) the fifth cause of action for a writ of mandate pursuant to Code of Civil Procedure section 1085 striking the election results for Measure H, and/or striking the ratification clause set forth in the ordinance at County Municipal Code section 4.72.430; and (6) the sixth cause of action for declaratory relief seeking a declaration of plaintiff's "rights and the Defendants' duties regarding all legal issues raised in this Contest," including the County's constitutional and statutory duties relative to both measures.

All six causes of action incorporated by reference the same core allegations of wrongdoing by the County and its officials, namely the violation of state initiatives Proposition 62 (passed in 1986) and Proposition 218 (passed in 1996). We summarize plaintiff's allegations in the following paragraphs of this background summary.

Plaintiff alleged that in 1995, the California Supreme Court held in *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220 (*Guardino*), that the voter approval requirements for local tax measures mandated by Proposition 62 are constitutional. After issuance of the decision in *Guardino*, the real parties in interest knew the Hotel Tax and Landfill Tax were illegal because they were enacted without voter approval in violation of Proposition 62.

Up until 1990, the Hotel Tax was a valid, "grandfathered" local taxing measure, despite the lack of voter approval, due to its original adoption before the passage of

6

Proposition 62. However, the County, in 1990, "unilaterally, without voter approval and in direct violation of Proposition 62" increased the Hotel Tax by 2 percent to the rate of 12 percent. The Landfill Tax was originally enacted in 1990, without voter approval, in direct violation of Proposition 62.

Despite its knowledge of the limits on its taxing authority, the County through the Board and its officials, continued to collect the illegally increased Hotel Tax and the illegally enacted Landfill Tax for another 16 years. The County was aware that Propositions 62 and 218 provided a limited window period in which local governments could seek to validate an illegally enacted tax, but the County failed to act within the window period.

Finally, in 2012, the County belatedly acted to place the Hotel Tax and the Landfill Tax on the ballot to be approved by County voters. However, the ballot and election materials for both measures were "drafted, reviewed and published" with the intent to mislead voters, failed to conform to the requirements of Elections Code section 9160, and constituted improper election advocacy in violation of Government Code section 54964. The County wrongfully included "unconstitutional" ratification clauses in both measures (L.A. County Mun. Code, §§ 4.72.43, 4.63.180), and failed to explain, in a statutorily required neutral fashion, the purpose and scope of the measures, specifically the County's desire to retroactively validate over 20 years of illegal collection of taxes. The ballot materials were materially false, deceptive and incomplete, and included wrongful election advocacy to emotionally sway voters into believing the tax revenues were needed to fund specific essential services. The conduct by the County and its officials effectively disenfranchised voters and prevented an informed choice at the polls.

There are no allegations in the first amended pleading alleging plaintiff ever made any preelection challenge to either ballot measure, nor any allegations plaintiff was ever assessed or paid either tax, or is seeking a refund for the payment of any illegally collected taxes.

7

The County, Logan, Krattli and the Board filed a demurrer to the operative pleading. After briefing and oral argument, the trial court sustained the demurrer without leave to amend and entered a judgment of dismissal.

This appeal followed.

## DISCUSSION

"In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (*Howard Jarvis Taxpayers Association v. City of La Habra* (2001) 25 Cal.4th 809, 814.) Properly pleaded facts do not include contentions, deductions or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Moreover, specific allegations prevail over general, and pleaded facts will not be accepted as true where contradicted by facts which may be judicially noticed or which are contained in exhibits attached to the pleading. (See *Financial Corporation of America v. Wilburn* (1987) 189 Cal.App.3d 764, 768-769; see also *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 (*Dodd*) ["facts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence"] & *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.)

The crux of plaintiff's argument is that the Hotel Tax and the Landfill Tax both sought to ratify the *past* collection of taxes illegally imposed in violation of both statutorily and constitutionally mandated voter-approval requirements, and that the ballot and election materials crafted by the County were deceptive and meant to mislead the voters into affirming the County's misconduct. This lawsuit is unequivocally *a postelection challenge* seeking to set aside the results of the June 5, 2012 election. Recently, in *Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107 (*Owens*), this court decided a similar challenge brought by the same law firm that represents plaintiff in this case; *Owens* rejected the same arguments asserted here. We are not persuaded by plaintiff's argument that the applicable law and standard of review for postelection challenges discussed in detail in *Owens* should not govern this appeal. Not only do we

8

find no reason to depart from *Owens*, we also are not persuaded by plaintiff's due process argument which rests on authority applicable to administrative proceedings as discussed in cases such as *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, and does not apply to an election contest. We now turn to an analysis of the challenged ballot measures.

"The purpose of an election contest is 'to ascertain the will of the people at the polls, fairly, honestly and legally expressed.' [Citation.] 'Strict rules embodied in the Elections Code govern a court's review of a properly contested election. " 'It is a primary principle of law as applied to election contests that *it is the duty of the court to validate the election if possible*. That is to say, the election must be held valid unless plainly illegal. [Citations.]' " [Citation.]' [Citations.]" (*Friends of Sierra Madre v. City of Sierra Madre* (2001) 25 Cal.4th 165, 192, italics added (*Friends of Sierra Madre*).)

An election contest is statutory in nature and the grounds for a postelection challenge are set forth in Elections Code section 16100.[1] These enumerated statutory grounds are exclusive. (*Friends of Sierra Madre*, *supra*, 25 Cal.4th at pp. 192-194; accord, *People ex rel. Kerr v. County of Orange* (2003) 106 Cal.App.4th 914, 932 (*Kerr*).) This postelection contest does not fall within any of the enumerated statutory grounds.

---

**1**     Elections Code section 16100 provides*: "Any elector of a county, city, or of any political subdivision of either may contest any election held therein*, for any of the following causes: [¶] (a) That the precinct board or any member thereof was guilty of malconduct. [¶] (b) That the person who has been declared elected to an office was not, at the time of the election, eligible to that office. [¶] (c) That the defendant has given to any elector or member of a precinct board any bribe or reward, or has offered any bribe or reward for the purpose of procuring his election, or has committed any other offense against the elective franchise defined in Division 18 (commencing with Section 18000). [¶] (d) That illegal votes were cast. [¶] (e) That eligible voters who attempted to vote in accordance with the laws of the state were denied their right to vote. [¶] (f) That the precinct board in conducting the election or in canvassing the returns, made errors sufficient to change the result of the election as to any person who has been declared elected. [¶] (g) That there was an error in the vote-counting programs or summation of ballot counts."

9

While plaintiff labeled his statutory claim as arising from "malconduct" of County officials, a review of the pleading, attached exhibits and judicially noticeable facts reveals the claim is in fact an attack on the alleged sufficiency and propriety of the ballot materials—a ground which may only be raised *preelection*. (*Friends of Sierra Madre*, *supra*, 25 Cal.4th at pp. 192-194; accord, *Kerr*, *supra*, 106 Cal.App.4th at pp. 932-934, & *Owens*, *supra*, 220 Cal.App.4th at p. 123 ["Generally, a challenge to ballot materials must be made before an election. Indeed, a postelection challenge to ballot materials is not permitted by the Elections Code."].) Plaintiff's statutory claim therefore fails as a matter of law.

Nevertheless, like the plaintiffs in *Owens* and *Kerr*, plaintiff argues the election here was so fundamentally flawed as to raise the specter of constitutional deprivations of due process and free speech. "The power of the court to invalidate a ballot measure on constitutional grounds is an exception to this limitation on election contest proceedings. [Citation.] Assertedly invalid statutes or ordinances may be challenged on constitutional grounds in an election contest, which leads to an order setting aside the result of the election, or on constitutional or other grounds by an action for declaratory relief or, where authorized, by a petition for writ of mandamus, each of which results in a judicial determination that the measure is invalid." (*Friends of Sierra Madre*, *supra*, 25 Cal.4th at p. 192, fn. 17.)

*Kerr* aptly explained that given the fact "the Legislature has determined in the Election Code that an election cannot be undone on the basis of alleged deficiencies in an impartial analysis, trying to achieve the same result under the rubric of constitutional due process . . . requires a showing that the impartial analysis profoundly misled the electorate, not that it just didn't educate the electorate as to all the legal nuances of the measure." (*Kerr*, *supra*, 106 Cal.App.4th at p. 934.) *Owens* elaborated: "Although the California appellate courts have recognized the 'possibility' that an impartial analysis of a county measure or other ballot materials can be so misleading and inaccurate 'that constitutional due process requires invalidation of the election' [citation], no California

10

appellate court, to our knowledge, has invalidated an election on this basis." (*Owens*, *supra*, 220 Cal.App.4th at p. 123.)  Our research has also failed to disclose any such case.

We conclude plaintiff's due process claims fare no better than the similar constitutional claim his lawyers raised in *Owens*.  Resolving whether allegedly deceptive ballot materials rise to the level of a deprivation of due process ordinarily " 'will depend on whether the materials, in light of other circumstances of the election, were so inaccurate or misleading as to prevent the voters from making informed choices.  In conducting this inquiry courts should examine the extent of preelection publicity, canvassing and other informational activities, as well as the substance or content of such efforts.  The ready availability of the text of the ordinance, or the official dissemination and content of other related materials, such as arguments for or against the measure, will also bear on whether the statutory noncompliance rendered the election unfair.  Finally, courts should take into account the materiality of the omission or other informational deficiency.  Flaws striking at the very nature and purpose of the legislation are more serious than other, more ancillary matters.' [Citation.]" (*Owens*, *supra*, 220 Cal.App.4th at p. 124.)

Plaintiff claims the ballot materials contained material omissions because they did not inform the public that both ballot measures violated Proposition 218.  We are not persuaded either ballot measure violated Proposition 218, which was enacted *in 1996*.  The 2 percent increase in the Hotel Tax and the Landfill Tax were enacted years earlier, in 1990.  "Structurally, Proposition 218 sets up a dual system of voting on taxes.  It contains two parallel subdivisions, now set forth respectively in article XIII C, section 2, subdivision (b) and article XIII C, section 2, subdivision (d), of the state Constitution.  They govern two different kinds of taxes.  The language in each subdivision is *almost* identical.  *A vote is required before a tax may be imposed, extended or increased*.  But the required quantum of support for the tax varies with the kind of tax being imposed, extended or increased.  If, as provided for in subdivision (b), a tax is a 'general' one, the quantum is a simple majority.  But if the tax is 'special', a supermajority of two-thirds is

required." (*Citizens Association of Sunset Beach v. Orange County Local Agency Formation Commission* (2012) 209 Cal.App.4th 1182, 1189, italics added.)

Plaintiff is correct that since the passage of Proposition 218, the County, like other local entities in the state, is constitutionally required to present any proposed tax measure to the electorate for a vote before that tax can be lawfully imposed. However, it is undisputed the Hotel Tax was first enacted in 1964 and increased to the rate of 12 percent in 1991. The Hotel Tax therefore did not violate the voter approval requirements of Proposition 218 which was *not* passed until 1996. (*Owens*, *supra*, 220 Cal.App.4th at p. 130 [city's utility user tax enacted in 1991 without voter approval did not violate voter approval requirements of Proposition 218]; accord, *Batt v. City and County of San Francisco* (2010) 184 Cal.App.4th 163, 176 [city's transient occupant hotel tax, originally enacted in 1961, was in place when Proposition 218 was passed and therefore was not invalid for having not been submitted to the electorate], and *Burbank-Glendale-Pasadena Airport Authority v. City of Burbank* (1998) 64 Cal.App.4th 1217, 1226-1227 [charter city's transient parking tax enacted in 1995 and first assessed in January 1996 was valid on its effective date and did not violate Proposition 218]; see also *Strauss v. Horton* (2009) 46 Cal.4th 364, 470 [absent express retroactivity provision or plain evidence the Legislature or the voters intended a retroactive application, statutes and constitutional amendments are presumed to apply prospectively], and *Brooktrails Township Community Services District v. Board of Supervisors of Mendocino County* (2013) 218 Cal.App.4th 195, 205 [same].)

The same holds true for the Landfill Tax, first enacted in 1991, some five years before the passage of Proposition 218. (*Owens*, *supra*, 220 Cal.App.4th at p. 130.)[2] It

---

[2] Because neither measure violates Proposition 218, plaintiff's contention the County violated the "window period" for validation actions on tax measures, and failed to explain this violation in the ballot materials, is equally without merit. " '[T]he window period provision was intended to discourage local taxing authorities from rushing to impose taxes after the ballot measure became public knowledge but before its enactment.' [Citation.]" (*Owens*, *supra*, 220 Cal.App.4th at p. 129.) The window period

12

follows then that the fact the ballot materials did not discuss Proposition 218 does not provide any support for plaintiff's contention the electorate was profoundly misled as to the effect of either ballot measure or was effectively disenfranchised.

As for the County's failure to discuss Proposition 62 in the ballot materials, plaintiff's argument is also unavailing. Proposition 62 was enacted in 1986. It was a statutory initiative, *not* an amendment to the state Constitution. As relevant here, it enacted Government Code section 53723 which provides: "No local government, or district, whether or not authorized to levy a property tax, may impose any general tax unless and until such general tax is submitted to the electorate of the local government, or district and approved by a majority vote of the voters voting in an election on the issue."

The Hotel Tax was first imposed more than 20 years before the passage of Proposition 62. The tax was increased, without voter approval, in 1990 after Proposition 62 was in effect. The Landfill Tax was first enacted during this same time period. At that time, at least two appellate courts had held the voter approval requirements of Proposition 62 were unconstitutional. (See, e.g., *City of Woodlake v. Logan* (1991) 230 Cal.App.3d 1058 and *City of Westminster v. County of Orange* (1988) 204 Cal.App.3d 623.) It was not until 1995 that the Supreme Court declared the voter approval requirements of Proposition 62 were constitutional in *Guardino*, *supra*, 11 Cal.4th 220.

Contrary to plaintiff's contentions, the ballot and election materials for both the Hotel Tax and the Landfill Tax, while not expressly identifying Proposition 62, do state that changes in state law have made the ratification by voters necessary to continue the 12 percent Hotel Tax and the 10 percent Landfill Tax.

The impartial analysis for Measure H acknowledged the purpose of the measure was to "authorize" the continuation of the Hotel Tax and to "ratify" and approve the past collection of the tax. The impartial analysis also acknowledged the tax was the subject of

---

is not relevant to measures in existence before the operation of Proposition 218 like both the Hotel Tax and the Landfill Tax.

13

pending litigation.  The argument submitted in favor of the Hotel Tax pointed out that a change in state law "requires County voters to ratify this tax in order to maintain it at its current rate."

The impartial analysis for Measure L explained:  "The Landfill Tax has been in effect since January 1991 at the current rate of 10% of gross receipts.  Subsequent state court decisions have found that voter approval may be required for certain taxes imposed after 1990.  Should the County be sued, an adverse decision could place the Landfill Tax revenues at risk, resulting in a reduction in general funds.  [¶]  Approval of this measure ratifies the current rate and approves the past collection of the Landfill Tax from operators of landfills and waste disposal facilities in the unincorporated area of the County of Los Angeles."  And, the argument in favor of the measure reiterated that a change in state law "requires County voters to ratify this tax in order to maintain it at its current rate."  It further stated that if the measure was not approved "the tax could be completely eliminated, and the County would have to cut those services on which County residents depend."

Plaintiff has not shown the voters were profoundly misled as to the nature or purpose of either ballot measure because of any failure to further explain the nuances of Proposition 62 in greater detail.

Further, plaintiff's allegations as to the deficiencies or factual misrepresentations in the ballot materials, including the title and the impartial analysis for each measure, are contradicted by the plain language of the ballot materials attached as exhibits to the pleading. (*Dodd*, *supra*, 222 Cal.App.3d at p. 1627.)  The references in the title and in the impartial analysis to each ballot measure being a "continuation" of an existing tax or providing for the "readopt[ion]" of an existing tax are not misleading or false.  It was objectively correct that both the Hotel Tax and the Landfill Tax had been "imposed without interruption" and that the passage of each measure would result in the continuation and readoption of both county ordinances, albeit as modified, if the voters approved of them. (*Owens*, *supra*, 220 Cal.App.4th at pp. 124-125.)

14

"The County, through its counsel, was required to provide an *impartial* title and summary of the purpose of the measure (Elec. Code, § 9105, subd. (a)), as well as a separate *impartial* analysis showing the effect of the measure (Elec. Code, § 9160, subd. (b)). It was not required to inform the voters of all of the *arguments* against the measure. That task fell to the opponents of the measure." (*Owens*, *supra*, 220 Cal.App.4th at p. 125.) Simply because no opposition statement was submitted to either measure, did not require the County to take on the task of articulating any and all possible arguments against the measures. Indeed, the County was statutorily proscribed from including an impartial analysis and summary that exceeded 500 words. (§§ 9105, subd. (a), 9160, subd. (b); see also *Kerr*, *supra*, 106 Cal.App.4th at p. 936.)

Moreover, the full text of the proposed amended ordinances were attached to the election materials. Where "the voters are provided the whole text of a proposed law or ordinance, we ordinarily assume the voters voted intelligently on the matter." (*Owens*, *supra*, 220 Cal.App.4th at p. 126.)

Plaintiff's free speech claims are also without merit. Plaintiff, as did the *Owens* plaintiff, primarily relies on *Vargas v. City of Salinas* (2009) 46 Cal.4th 1 and *Stanson v. Mott* (1976) 17 Cal.3d 206, to support his free speech claim. But, the danger to the electoral process discussed by the Supreme Court in *Vargas* and *Stanson* concerned a public entity or official devoting " 'funds from the public treasury, or the publicly financed services of public employees to *campaign activities* favoring or opposing' " a particular measure. (*Owens*, *supra*, 220 Cal.App.4th at p. 128, citing *Vargas*, at pp. 36-37.) Plaintiff has not alleged any facts or made any argument that public funds or public employees were improperly used to "campaign" for either ballot measure.

And, as already explained above, nothing in the wording or structure of the ballot materials reflects improper campaign advocacy. "The constitutional guarantees of equal protection and freedom of speech as applied to public elections 'mean, in practical effect, that the wording on a ballot or the structure of the ballot cannot favor a particular partisan position.' [Citations.] The ballot title, for example, 'must not be false, misleading, or partial to one side. . . . [¶] . . . We understand "partial" to mean [that] the council's

15

language signals to voters the council's view of how they should vote, or casts a favorable light on one side of the [issue] while disparaging the opposing view.' [Citations.]" (*McDonough v. Superior Court* (2012) 204 Cal.App.4th 1169, 1174.)

We do not believe the County engaged in improper advocacy by including statements in the ballot materials that revenue generated by both taxes would provide funding for various general fund services, including parks, libraries, senior services, and law enforcement. Nothing in the record shows this to be inaccurate or a mere ploy to appeal to voters' emotions and support for certain County services. Plaintiff has failed to persuade us the ballot and elections materials were partial or improperly signaled to voters that they should or must vote in favor of either measure.

Finally, it must be noted the record establishes it is undisputed plaintiff did not avail himself of any of the statutory preelection bases for opposing either measure or otherwise seek to clarify any allegedly misleading aspect of the ballot materials.

### DISPOSITION

The judgment of dismissal is affirmed. Respondents shall recover their costs on appeal.

GRIMES, J.

We concur:

BIGELOW, P. J.

FLIER, J.

16